1    JACQUES CHEN, Esq. CA SBN. 113399
2    2029 Century Park East, Suite 400
     Los Angeles, California 90067
3    Tel:  (310) 201-4382
     Fax: (866) 425-6035
4

5    Attorneys for Plaintiff,
     USA Dietary Supplements, Inc.
6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   USA DIETARY SUPPLEMENTS, INC., a Nevada corporation | Case No.: CV 17-5246 DMG (SSx) Hon. Dolly M. Gee |
| 12 | |
| 13     Plaintiff, | **FIRST AMENDED COMPLAINT FOR:** |
| 14 |    1. **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS;** |
| 15      vs. |    2. **FRAUD;** |
| 16 |    3. **CIVIL CONSPIRACY TO COMMIT FRAUD;** |
| 17   ELI ALOISI, individually, ABOVE ALL OFFERS, INC., an Oregon corporation, and DOES 1 to 100, inclusive, |    4. **UNFAIR COMPETITION IN VIOLATION OF BUS. & PROF. CODE § 17200;** |
| 18 |    5. **RACKETEERING IN VIOLATION OF 18 U.S.C. § 1962(c);** |
| 19     Defendants. | |
| 20 |    6. **CONSPIRACY TO ENGAGE IN RACKETEERING ACTIVITY IN VIOLATION OF 18 U.S.C. § 1962(d);** |
| 21 | |
| 22 | |
| 23 | |
| 24 | **JURY TRIAL DEMANDED** |

25      Plaintiff USA DIETARY SUPPLEMENTS, INC. ("USA DIETARY

26   SUPPLEMENTS") by and through undersigned counsel, for its First Amended Complaint

27   against Defendants ELI ALOISI, ABOVE ALL OFFERS, INC., and DOES 1 to 100,

28   inclusive, (collectively "DEFENDANTS") alleges and avers as follows:

## I.   INTRODUCTION

1.     USA DIETARY SUPPLEMENTS, INC. ("USA DIETARY SUPPLEMENTS") brings this action arising from a business relationship that began in January 25, 2017 whereby Defendant ABOVE ALL OFFERS, INC. ("AAO") was engaged to provide quality internet "CPA (cost per acquisition) traffic" ("traffic") for USA DIETARY SUPPLEMENTS' nutritional products through AAO's network of affiliates and publishers located throughout the U.S. and internationally. This traffic was represented by AAO as being quality and legitimate traffic which complied with stringent standards and which did not employ fraudulent practices to market USA DIETARY SUPPLEMENTS' products to the public.

2.     On or about April 18, 2017, USA DIETARY SUPPLEMENTS noticed that it was experiencing a high volume of credit card chargebacks from orders generated from AAO's internet traffic. USA DIETARY SUPPLEMENTS then discovered that AAO and its network of publishers and affiliates in fact employed the use of fraudulent acts including, but not limited to, publishing fake news, fake celebrity endorsements and fake ESPN stories featuring the use of USA DIETARY SUPPLEMENTS' products by Lebron James.

3.     The operation of AAO, ALOISI and DOES 1 to 100 was conducted in a fraudulent manner, and in breach of duties owed to USA DIETARY SUPPLEMENTS, through conduct including the billing of transactions that were generated by traffic that employed the use of fake news, use of fake celebrity endorsements, fake survey ads as well as the use of CAKE software using the "Static Throttle" function to misreport the actual number of transactions, and the use of other fraudulent and noncompliant sources of internet traffic and software which caused USA DIETARY SUPPLEMENTS severe harm and blowback to its business.

## II.   PARTIES

4.     Plaintiff USA DIETARY SUPPLEMENTS, INC. ("USA DIETARY SUPPLEMENTS") is a corporation formed in the State of Nevada. Its head office and principal place of business is located in Burbank, California. USA DIETARY SUPPLEMENTS sells nutritional dietary supplement products online to customers in the U.S. Its Chief Executive Officer is Joseph Wanamaker ("WANAMAKER").

5.      Defendant ELI ALOISI ("ALOISI") is a resident of, and conducts business in, the State of Oregon. ELOISI is president of Defendant ABOVE ALL OFFERS, INC.

6.      Defendant ABOVE ALL OFFERS, INC. ("AAO") is a corporation formed in the State of Oregon. AAO operates a global network of affiliates and publishers who provide their marketing services to advertisers.

7.      Plaintiff is in the process of confirming the true names and capacities of the defendants designated in this Complaint as DOES 1 to 100, inclusive, and therefore sues these defendants by fictitious names at this time. DOES 1 to 100 are affiliates or related entities to the named defendants and, on information and belief, are residing in the State of California and this judicial district, or have transacted business in the State of California during the time period covered by this Complaint, and are subject to the jurisdiction of this Court.

**III.    SUBJECT MATTER JURISDICTION AND VENUE**

8.      The court has jurisdiction over USA DIETARY SUPPLEMENTS' claims under 28 U.S.C.§ 1331 and 18 U.S.C. § 1964(c) and §1964(d). Plaintiff USA DIETARY SUPPLEMENTS' fifth and sixth counts arise out of the same case or controversy as its federal claims, as all claims in this action arise from a common nucleus of operative facts. The court has supplemental jurisdiction over USA DIETARY SUPPLEMENTS' state law claims pursuant to 28 U.S.C. §1367.

9.      The United States District Court for the Central District of California is the appropriate venue for this action pursuant to 28 U.S.C 1391(b)(1) and (2) because at least one defendant resides in this district and a substantial part of the events or omissions giving rise to the claims took place in the Central District of California.

**IV.    PERSONAL JURISDICTION**

10.      Exercise of jurisdiction over Defendants ALOISI, AAO, and DOES 1 to 100 is reasonable and proper because each has extensive contacts with the State of California including the Defendants' unlawful and fraudulent acts alleged in this Complaint. ALOISI and AAO both participated in directing tortious acts of interference with contractual relations at USA DIETARY SUPPLEMENTS and PELEKAN PARTNERS who are both situated and based in the State of California.

V.    **FACTS**

11.     Plaintiff is informed and believes and on the basis of such information alleges that at all material times Defendant AAO was beneficially owned by Defendant ALOISI. Plaintiff is informed and believes that there exists, and at all times herein mentioned there existed a unity of interest and ownership between ALOISI on the one hand, and AAO on the other hand, such that individuality and separateness between ALOISI on the one hand and AAO on the other hand, has ceased, and AAO is the alter ego of ALOISI, in that it is, and at all times herein mentioned was, a mere shell, instrumentality and conduit through which ALOISI carried on his activities, exercising complete control and dominance of the corporation to such an extent that any individuality or separateness of the entity from the individual does not, and at all times herein, did not exist. Therefore adherence to the fiction to the separate existence of AAO as an entity distinct from ALOISI would permit an abuse of the corporation privileges and would sanction fraud and promote injustice. ALOISI is, consequently, liable to Plaintiff for the conduct of AAO with respect to the obligations and omissions as alleged herein.

12.     The names and capacities of Defendant DOES 1-100, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of said Defendants when ascertained. Plaintiffs is informed and believes, and based thereon alleges, that each fictitiously named Defendant is legally responsible to Plaintiffs for the damages alleged herein.

13.     Plaintiff is informed and believes and thereon alleges that at all material times, each Defendant was the agent and employee of all other Defendants, acting within the course and scope of such agency and employment with the full knowledge, consent, authority, ratification, and permission of the remaining defendants. At the time and place of the events hereinafter mentioned, the Defendants, and each of them, were engaged in a joint venture and common enterprise and were acting within the scope of and in pursuance of the joint venture and common enterprise.

14.     Plaintiff is informed and believes and thereon alleges that at all material times each Defendant was part of a conspiracy to commit the wrongs alleged herein, and acted in

concert with all other Defendants with mutual knowledge, agreement, participation, and cooperation to accomplish the wrongful and fraudulent plan herein, and as such each Defendant is jointly and severally responsible for the harm resulting to Plaintiff.

15.     On or about January 20, 2017, in a telephone conversation, WANAMAKER and his Associate, Christine Naud, on behalf of USA DIETARY SUPPLEMENTS, told ALOISI and AAO account manager, Jacki Clason, that USA DIETARY SUPPLEMENTS needed AAO's network of publishers and affiliates to provide legitimate and compliant traffic for USA DIETARY SUPPLEMENTS' sales campaign of nutritional products. WANAMAKER and Naud explained to ALOISI and Clason that USA DIETARY SUPPLEMENTS had a very bad experience with its previous affiliate network due to the affiliate network employing affiliates and publishers who used fake news websites and fake celebrity endorsements to advertise USA DIETARY SUPPLEMENTS' products. WANAMAKER told ALOISI and Clason that the fake publicity caused severe blowback due to mass cancellation of orders, requests by customers for refunds, and massive chargebacks levied by credit card processors which in turn caused USA DIETARY SUPPLEMENTS' merchant accounts to be terminated and assessed large fees and charges. WANAMAKER told ALOISI and Clason that USA DIETARY SUPPLEMENTS had received a cease and desist order from The Walt Disney Company / ESPN because of a prior fake ESPN ad campaign. WANAMAKER expressly stated that he did not want AAO's services to include fake websites or fake celebrity endorsements.

16.     In a Skype telephone conference call on January 25, 2017, in response to WANAMAKER'S concerns over fake publicity, AAO account manager, Jacki Clason, told WANAMAKER that AAO was "very quality oriented" and assured him there would be "no use of celebrity images, names, or doctors, without their express written consent", fake news, fake celebrity endorsements or fake survey traffic." Jacki Clason stated that AAO "did not tolerate noncompliance" with these standards.

17.     In a Skype telephone conference call on January 25, 2017, Defendants ALOISI and AAO (collectively, "Defendants") stated to WANAMAKER and USA DIETARY SUPPLEMENTS that:

   a.  AAO would provide quality, legitimate and compliant traffic from its network of affiliates and publishers;

   b.  AAO were experts in online affiliate marketing;

   c.  AAO's affiliate network did not and would not engage affiliates and publishers who used fake news websites and fake celebrity endorsements to advertise USA DIETARY SUPPLEMENTS products;

   d.  AAO would not tolerate noncompliance with legitimacy standards;

   e.  AAO would not utilize adult websites, surveys, incentives, or other deceptive advertising.

   f.  AAO would initially provide a cap on traffic limited to 75-100 orders per day. This would ensure a good rebill rate and allow USA DIETARY SUPPLEMENTS to assess the quality of AAO's traffic before increasing the traffic; and

   g.  AAO would target male demographics over 35 years of age.

18.    In fact, Defendants ALOISI, AAO and DOES 1-100 operate a shadowy network of publishers and affiliates throughout the U.S., including California, and international locations. The AAO network of publishers and affiliates operate under a cloak of secrecy. AAO does not disclose the names or contact information for its publishers and affiliates to advertisers such as USA DIETARY SUPPLEMENTS, claiming that it is proprietary and confidential information. More importantly, ALOISI, AAO, and DOES 1 to 100 have concealed and/or destroyed the content of the advertisements posted by the affiliate network of publishers using fake news sites, fake celebrity endorsements and fake surveys under the pretext that it is Defendants' proprietary or confidential information. ALOISI, AAO and DOES 1-100 knowingly employed the use of fake news sites, fake celebrity endorsements, fake surveys, and other fraudulent artifices in furtherance of the criminal enterprise.

19.    On January 20, 2017, WANAMAKER disclosed to ALOISI the identity of USA DIETARY SUPPLEMENTS' finance vendor, Pelekan Partners, Inc. ("Pelekan"), a California corporation based in Huntington Beach, California, who financed its advertising invoices. Pelekan had a valid and enforceable lending agreement with USA DIETARY

SUPPLEMENTS. Pelekan did not have any relationship with AAO or ALOISI prior to WANAMAKER's disclosure of Plaintiff's relationship with Pelekan to ALOISI.

20.    On January 25, 2017, AAO began providing internet advertising services for USA DIETARY SUPPLEMENTS.

21.    On March 15, 2017, ALOISI informed WANAMAKER that one of its affiliate publishers involved in generating traffic to USA DIETARY SUPPLEMENTS had been caught by AAO engaging in blatant noncompliant advertising. ALOISI further informed WANAMAKER that since AAO was not going to pay for the noncompliant traffic, AAO was going to credit USA DIETARY SUPPLEMENTS for this noncompliant activity. The amount of the credit was small as the volume of noncompliant traffic involved was low. The true nature of this ruse was to lure WANAMKER and USA DIETARY SUPPLEMENTS into a false sense of security that AAO was delivering quality compliant traffic.

22.    On or about April 18, 2017, USA DIETARY SUPPLEMENTS began to notice an extremely high rate of credit card chargebacks. USA DIETARY SUPPLEMENTS had to process customer credits, returns, cancellations and chargebacks of sales. USA DIETARY SUPPLEMENTS has continued to experience a high rate of chargebacks which has caused it to incur massive merchant banking fees and charges.

23.    On or about April 18, 2017, USA DIETARY SUPPLEMENTS discovered that ALOISI, AAO and their network of publishers and affiliates had in fact employed the use of fraud to advertise USA DIETARY SUPPLEMENTS' products including, but not limited to, publishing fake news, fake celebrity endorsements, fake surveys, and fake ESPN stories featuring the purported use of USA DIETARY SUPPLEMENTS' products by celebrity athlete Lebron James.

24.    USA DIETARY SUPPLEMENTS protested to AAO that it was being billed for sales generated by fraudulent advertising.  In response, on or about June 29, 2017, ALOISI contacted Michael Brooks requesting the contact number for Jeff Brooks, CEO of Pelekan Partners who provides financing to USA DIETARY SUPPLEMENTS. ALOISI then called Jeff Brooks and informed him that USA DIETARY SUPPLEMENTS had a large debt with AAO and that WANAMAKER and USA DIETARY SUPPLEMENTS was in financial

distress and did not pay its vendors' invoices. This caused Jeff Brooks to be distressed about USA DIETARY SUPPLEMENTS' creditworthiness and the threat of potential litigation. This in turn damaged USA DIETARY SUPPLEMENTS' credit arrangements and fees with Pelekan Partners.  To date, USA Dietary Supplements is still in debit to Pelekan due to the fraudulent traffic and actions of AAO.

25.     On or about May 26th 2017, ALOISI and AAO told WANAMAKER that if USA DIETARY SUPPLEMENTS did not pay its outstanding invoice, AAO would "give it to CJ and then you're being sued.  I hope you realize that", and "If you don't make any effort on payments then it's going to CJ" and "We're not going to mess around on this one".

26.     Plaintiff is informed and believes and on the basis of such information alleges that at all material times, ALOISI, AAO, and DOES 1 to 100 used fraudulent and corrupt business practices to lure USA DIETARY SUPPLEMENTS and other similarly situated advertisers to contract for their advertising services. ALOISI, AAO, and DOES 1 to 100 systematically disrupted USA DIETARY SUPPLEMENTS's business by:

  a.  Building and maintaining a network of shadowy affiliates and publishers based in the U.S. and internationally, who employed the use of deceptive and fraudulent techniques to target USA DIETARY SUPPLEMENTS' customers and entice them to buy its products online through the use of fake news sites, and fake celebrity endorsements. This in turn affected USA DIETARY SUPPLEMENTS by triggering customer cancellations, refund requests, chargebacks and higher-than-normal merchant processing fees and penalties;

  b.  Generating false billing reports to Plaintiff's account that did not reflect the actual amounts that should have been billed;

  c.  Employing the use of cyber "shaving" by the Static Control function of CAKE software to underreport the actual sales triggered in the sales reporting software of AAO's publishers and affiliates. Because AAO's publishers and affiliates seek to increase their EPC (earnings per click), AAO's and ALOISI's cyber shaving techniques incentivize their affiliates and publishers to inflate internet traffic by adding more traffic generated by the practice of employing fake news,

fake surveys, and fake celebrity endorsements in the advertising of USA DIETARY SUPPLEMENTS' products thus causing Plaintiff more blowback to its sales campaign;

d. Misusing co-conspirator credit cards to trigger billable events. Defendants ALOISI, AAO, and DOES 1 to 100 engaged in a scheme to deceive Plaintiff by organizing the placement of orders and then cancelling those same orders within a short period of time. AAO would then bill Plaintiff for the transaction despite the order being cancelled;

e. Using threats and intimidation to strong arm payments from Plaintiff by interfering with the contractual relations of USA DIETARY SUPPLEMENTS and its' finance vendor, Pelekan Partners.

## CAUSES OF ACTION

## COUNT I

### Tortious Interference with Contractual Relationship

### (Against ALOISI and AAO)

27. Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 26.

28. There was a binding enforceable financing contract between USA DIETARY SUPPLEMENTS and Pelekan Partners.

29. ALOISI, AAO, and DOES 1 to 100, and each of them, had actual knowledge of the existence of that binding and enforceable financing contract.

30. ALOISI, AAO, and DOES 1 to 100, and each of them, intentionally and without justification or privilege, interfered with the contractual relationship between US DIETARY SUPPLEMENTS and Pelekan Partners by making false representations to Pelekan Partners about USA DIETARY SUPPLEMENTS' indebtedness to AAO, and by disparaging USA DIETARY SUPPLEMENTS' business practices.

31. On or about June 29, 2017, ALOISI contacted Michael Brooks on Facebook requesting the contact number for Jeff Brooks, the owner of Pelekan Partners who provides financing to USA DIETARY SUPPLEMENTS. On obtaining Pelekan Partners' telephone

number, ALOISI then called Jeff Brooks, CEO of Pelekan Partners, on or about June 29th 2017, and told him that USA DIETARY SUPPLEMENTS had a large debt with AAO and that WANAMAKER and USA DIETARY SUPPLEMENTS were in financial distress and did not pay vendors' invoices. This caused Jeff Brooks to be distressed about USA DIETARY SUPPLEMENTS' creditworthiness and possibility of potential litigation. This in turn damaged and ended USA DIETARY SUPPLEMENTS' credit arrangements and fees with Pelekan Partners.

32.    The statements made by ALOISI to Jeff Brooks were in fact false and were made with the intent to damage USA DIETARY SUPPLEMENTS' financing agreement with Pelekan Partners.

33.    As a consequence of ALOISI's, AAO's and other unknown agents and co-conspirators' interference, USA DIETARY SUPPLEMENTS has been damaged due to the loss of favorable financing terms, in the sum of at least $1,000,000. As a further direct and foreseeable consequence of Defendants' interference, USA DIETARY SUPPLEMENTS' reputation in the industry and with Pelekan Partners has been permanently damaged in an amount according to proof.

34.    As a result of ALOISI's, AAO's and other unknown agents' and co-conspirators' fraudulent, oppressive and malicious conduct, Plaintiff is entitled to an award of punitive damages.

## COUNT II

### Fraud- Misrepresentation

### (Against All Defendants)

35.    Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 34.

36.    Defendants ALOISI, AAO, and DOES 1 to 100 made material misrepresentations of fact to WANAMAKER regarding the legitimacy and quality of the traffic of AAO's network of publishers/affiliates, and that this traffic was not generated by fraudulent practices such as the use of fake news articles, fake surveys, and fake celebrity endorsements. WANAMAKER made multiple requests to AAO, ALOISI, and AAO

employees not to use fake news articles, fake surveys, and fake celebrity endorsements in connection with advertising USA DIETARY SUPPLEMENTS' products.

37.    In a Skype telephone conference call on January 25, 2017, in response to WANAMAKER'S concerns over fake endorsements, Jacki Clason, who was AAO's representative/account manager, told WANAMAKER that AAO was "very quality oriented" and stated there would be "no use of non-compliant fake news, fake celebrity images, names, or doctors, without their express written consent." Clason also stated that AAO "did not tolerate non-compliance" with these standards.

38.    In a Skype conference call on January 20th, 2017, ALOISI and CLASON told USA DIETARY SUPPLEMENTS that it would receive legitimate web traffic and product orders "We are very quality oriented" and "let us show you our quality before expecting us to flood you with traffic".

39.    The representations made by defendants were in fact false.  The true facts were:

a.    AAO and ALOISI and DOES 1 to 100 extensively employed the use of publisher and affiliates that used fake news articles, fake surveys, and fake celebrity endorsements to advertise USA DIETARY SUPPLEMENTS' products;

b.    AAO, ALOISI and DOES 1 to 100 engaged in the fraudulent practice of "shaving" using the Cake software tool "Static Control" to drive up the number of billable transactions;

c.    AAO, ALOISI and DOES 1 to 100 engaged in the fraudulent practice of using co-conspirator credit cards to trigger billable events. Defendants ALOISI, AAO, and DOES 1 to 100 engaged in a scheme to deceive Plaintiff by organizing the placement of orders and then cancelling those same orders within a short period of time.

40.    When the defendants made these representations, they knew them to be false and made these representations with the intention to deceive and defraud USA DIETARY SUPPLEMENTS and induce USA DIETARY SUPPLEMENTS to act in reliance on these

representations by placing orders for web traffic, or with the expectation that USA DIETARY SUPPLEMENTS would so act.

41.    USA DIETARY SUPPLEMENTS, at the time these representations were made by Defendants and at the time USA DIETARY SUPPLEMENTS took the actions herein alleged, was ignorant of the falsity of Defendants' representations and believed them to be true.  In reliance on these representations, Plaintiff was induced to, and did, place orders for web traffic and agreed to pay for the traffic generated by AAO's network thru their financial partner Pelekan Partners.

42.    Had USA DIETARY SUPPLEMENTS known the actual facts, it would not have taken such action.  USA DIETARY SUPPLEMENTS' reliance on Defendants' representation was justified because Defendants ALOISI and AAO represented that they possessed unique skills, had achieved excellent results for other clients, and were technically capable internet marketers with a legitimate network that would result in lucrative internet traffic.

43.    As a direct result of said acts of fraud, USA DIETARY SUPPLEMENTS has been damaged in the sum of at least $1,000,000, plus interest and attorneys fees.

44.    The aforementioned conduct was an intentional misrepresentation, deceit and/or concealment of material facts known to Defendants, with the intention on the part of Defendants of thereby depriving Plaintiff of money or otherwise causing injury, and was despicable conduct that subjected plaintiff to a cruel and unjust hardship and conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## COUNT III

### Civil Conspiracy to Commit Fraud

### (Against All Defendants)

45.    Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 44.

46.    Defendants ALOISI, AAO, and DOES 1 to 100, and each of them, acting in concert, came to a mutual understanding that they would participated in a common and unlawful plan to defraud USA DIETARY SUPPLEMENTS by agreeing to and acting in:

a. Building and maintaining a network of shadowy affiliates and publishers based in the U.S. and internationally, who employed the use of deceptive and fraudulent techniques to target USA DIETARY SUPPLEMENTS' customers and entice them to buy its products online through fraudulent marketing practices including but not limited to the use of fake news sites, fake surveys, and fake celebrity endorsements. This would in turn trigger customer cancellations, refund requests, chargebacks and higher-than-normal merchant processing fees and penalties;

b. Employing the use of cyber "shaving" by CAKE software using its Static Control function, to underreport the actual sales triggered in the sales reporting software of AAO's publishers and affiliates. Because AAO's publishers and affiliates seek to increase their EPC (earnings per click), AAO's and ALOISI's shaving techniques incentivize their affiliates and publishers to pad internet traffic by adding more traffic generated by the practice of employing fake news, fake surveys, and fake celebrity endorsements in the advertising of USA DIETARY SUPPLEMENTS' products thus causing Plaintiff more blowback to its sales campaign;

c. Using fraudulent advertising practices designed to trigger billable events to Plaintiff by misusing co-conspirator credit cards. Defendants ALOISI, AAO, and DOES 1 to 100 engaged in a scheme to deceive Plaintiff by organizing the placement of orders and then cancel the same orders within a short period of time. AAO would then still bill Plaintiff for the transaction despite the order being cancelled;

d. Using threats, disparagement and intimidation to strong arm payments from Plaintiff and interfering with the contractual relations of USA DIETARY SUPPLEMENTS and its' finance vendor, Pelekan Partners.

47.    Each of these Defendants knowingly conspired with each of the others to effectuate the fraud and maintain the appearance of legitimacy.

48.     As a result, USA DIETARY SUPPLEMENTS detrimentally and reasonably relied on the false representations of Defendants and has now been damaged as a result in an amount to be proven at trial, but not less than $1,000,000, plus interest and attorneys fees.

49.     The Defendants named in this count engaged in these acts with oppression, fraud and malice toward USA DIETARY SUPPLEMENTS and USA DIETARY SUPPLEMENTS is therefore entitled to an award of exemplary damages in an amount to be established at trial.

## COUNT IV

### Unfair Competition – Bus. & Prof. Code § 17200 et seq.

### (Against AAO)

50.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 49.

51.     Defendants ALOISI, AAO, and DOES 1 to 100, and each of their conduct of misrepresenting the legitimacy of their advertising services, employing fraudulent advertising practices to market USA DIETARY SUPPLEMENTS' products and the products of similarly situated advertisers, and intentionally interfering with USA DIETARY SUPPLEMENTS' existing contractual relations with Pelekan Partners, and other culpable conduct alleged hereinabove, constitute unfair, unlawful, fraudulent and/or deceptive business practices within the meaning of Business and Professions Code §§ 17200 et seq.

52.     By reason of such wrongful acts, USA DIETARY SUPPLEMENTS is and was, and will be in the future, deprived of the profits and benefits of said business relationships, agreements, and transactions with various prospective customers, and/or vendors and finance partners, and defendants have wrongfully obtained profits and benefits in an amount to conform to proof at trial, but in no event less than the jurisdictional minimum of this Court.

## COUNT V

### Violation of 18 U.S.C. §1962(c) - RICO

### (Against All Defendants)

53.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 52.

54.     Defendants ALOISI, AAO, and DOES 1 to 100, constitute an "enterprise" as that term is defined in 18 U.S.C. § 1961, engaged in activities proscribed by 18 U.S.C. § 1343. Such activities included willingly and knowingly devising a scheme or artifice to defraud, or to obtain money or property by means of false pretenses, representations, or promises and affected interstate commerce through the use of fraudulent internet advertising for sale of USA DIETARY SUPPLEMENTS products, and online sales transactions of those products to customers in multiple states.

55.     Defendants ALOISI, AAO, and DOES 1 to 100, as persons within the meaning of 18 U.S.C.A. § 1961(3), received income derived, directly or indirectly, from a pattern of racketeering activity which was used to fraudulently generate internet traffic and billable events.

56.     The  predicate acts which constitute this pattern of racketeering activity are:

    a.   From January 20, 2017, to May 2017, Defendants advertised USA DIETARY SUPPLEMENTS' products on the internet using fake stories intended to deceive the public and generate sales of the products;

    b.   From January 20, 2017, to May 2017, Defendants advertised USA DIETARY SUPPLEMENTS' products on the internet fake celebrity endorsements, including a fake endorsement by athlete Lebron James that was published sometime in early 2017;

    c.   From January 20, 2017, to May 2017, Defendants employed a scheme of using credit card numbers to order USA DIETARY SUPPLEMENTS' products and then cancel the orders, for the purpose of generating a billable event that USA DIETARY SUPPLEMENTS would have to pay Defendants for;

    d.   From January 20, 2017, to May 2017, Defendants employed the use of CAKE "shaving" software through the "Static Control" function to falsely increase Defendants' profits.

    e.   On or about June 26th, 2017, Defendants threatened to sue USA DIETARY SUPPLEMENTS in order to extort payment from USA DIETARY SUPPLEMENTS for fraudulently generated traffic and 'clicks'.

57.    The individual Defendants and other persons, including DOE affiliates, for the purposes of executing the scheme to defraud USA DIETARY SUPPLEMENTS, and in furtherance of the wrongful acts set forth herein, transmitted and caused to be transmitted communications by means of wire including, without limitation, telephone calls and Voice Over Internet Protocol calls among and between ALOISI, AAO, USA DIETARY SUPPLEMENTS, WANAMAKER, and Pelekan Partners.

58.    The individual Defendants and other persons, including DOE affiliates, for the purposes of executing the scheme to defraud USA DIETARY SUPPLEMENTS, and in furtherance of the wrongful acts set forth herein, transmitted and caused to be transmitted communications by means of wire including, without limitation, fake news articles, fake surveys, and fake celebrity endorsements on internet websites advertising USA DIETARY SUPPLEMENTS' products.

59.    Each use of the wires in furtherance of the Defendants' and the other individuals' scheme and artifice to defraud USA DIETARY SUPPLEMENTS, and in furtherance of the criminal acts set forth herein, constitutes a separate offense.

60.    The individual Defendants and other persons, including DOE affiliates, for the purposes of effectuating the aforesaid scheme, have concealed the various frauds perpetrated on USA DIETARY SUPPLEMENTS by, among other things, concealing and destroying the internet advertisements featuring the fraudulent content.

61.    In addition, Defendants ALOISI, AAO, and DOES 1 to 100, have received income that was derived, directly or indirectly, from a pattern of racketeering activity in which such Defendants participated and have used or invested, directly or indirectly, at least a part of such income in the acquisition of an interest in, or the establishment or operation of, an enterprise that is engaged in, or whose activities affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(a).

62.    As a direct and proximate result of the Defendants' conduct, USA DIETARY SUPPLEMENTS has sustained injury to its business or property within the meaning of 18 U.S.C. § 1964(c) and is entitled to treble damages. Plaintiff has been damaged in the sum of

at least $1,000,000. USA DIETARY SUPPLEMENTS is further entitled to recover its' attorney's fees and costs pursuant to 18 U.S.C. § 1964(c).

## COUNT VI

### Violation of 18 U.S.C. §1962(d) – RICO Conspiracy
### (Against All Defendants)

63.     Plaintiff re-alleges and incorporates by reference the allegations of paragraphs 1 through 62.

64.     The enterprise operated by the Defendants had a structure for making decisions and for controlling and directing the affairs of the group of Defendants on an ongoing basis. The Defendants acted together in an organized fashion. The structure had a hierarchy overseen and controlled by Defendants ALOISI, AAO and DOES 1 to 100, who acting individually and collectively, conceived and carried out the various sales transactions by fraudulent activities that secretly resulted in the illegal and improper payment of monies and other consideration to the Defendants and persons affiliated with the Defendants.

65.     From January 20, 2017, to May 2017, Defendants ALOISI and AAO, and other agents of Defendants, engaged in a series of communications and discussions with their affiliate network, namely the DOE publishers of fake news, fake surveys, and fake endorsement websites, in an effort to devise, foster or create a fraudulent scheme to advertise USA DIETARY SUPPLEMENTS' products in order to generate billable events and traffic, thereby fraudulently depriving Plaintiff of money.

66.     The individual Defendants and Defendant AAO, in concert with their agents or employees, including DOES 1 through 100, conspired to violate 18 U.S.C. § 1343 for which treble damages, costs of suit and attorneys' fees are required.

67.     In the commission of certain of the acts of racketeering set forth in Count V, ALOISI, AAO and DOES 1-100 conspired to violate 18 U.S.C. § 1343 and 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). At all relevant times, each of the Defendants is and was a person within the meaning of 18 U.S.C. §§1962(c) and 1962(d).

68.     In furtherance of this conspiracy, Defendants ALOISI, AAO, and DOES 1-100 agreed to the commission of the acts of racketeering set forth in Count V, and agreed to violate 18 U.S.C. § 1343 and 18 U.S.C. §1962(c). Specifically, ALOISI, AAO and DOES 1-100 agreed to the commission of all the acts specified in Count V, and each further agreed to the commission of at least two of those acts, including but not limited to: creating false records using CAKE software's "Static Control" function to facilitate the laundering of AAO funds; manipulating software to reduce reportable events; employing the widespread use of fake news, fake surveys, and fake celebrity endorsements to advertise Plaintiff's products; employing the use of credit cards to generate orders that were then cancelled.

69.     As a direct and proximate result of the Defendants' conduct, USA DIETARY SUPPLEMENTS has sustained injury to its business or property within the meaning of 18 U.S.C. § 1964(c) and is entitled to treble damages. Plaintiff has been damaged in the sum of at least $1,000,000. USA DIETARY SUPPLEMENTS is further entitled to recover its' attorney's fees and costs pursuant to 18 U.S.C. § 1964(c).

## **PRAYER**

WHEREFORE, USA DIETARY SUPPLEMENTS prays judgment against Defendants ELI ALOISI, ABOVE ALL OFFERS, INC., and DOES 1 to 100, jointly and severally, as follows:

1.  For compensatory damages to be proven at trial, in an amount not fully determined at this time but in excess of $1,000,000;

2.  For punitive damages in an amount to be determined at trial;

3.  For treble damages under Count V and Count VI;

4.  For prejudgment interest;

5.  For attorneys' fees, costs, and expenses incurred by the prosecution of this action; and

6.  For such other and further relief as the Court may deem proper.


JURY TRIAL DEMANDED.

Date: August 29, 2017                    LAW OFFICES OF JACQUES CHEN

                                         /s/ *Jacques Chen*_____
                                         JACQUES CHEN, Esq.
                                         Attorneys for Plaintiff
                                         USA DIETARY SUPPLEMENTS